**FULTON'S EX'RS v. COMMISSIONER OF INTERNAL REVENUE.**

**FULTON v. SAME.**

Nos. 4997, 4998.

Court of Appeals of District of Columbia.

Argued Jan. 9, 1931.

Decided Feb. 2, 1931.

Barry Mohun and Geo. E. Elliott, both of Washington, D. C., for appellants.

Sewall Key, Howard T. Jones, C. M. Charest, and Morton K. Rothschild, all of Washington, D. C., for appellee in case No. 4997.

Howard T. Jones, C. M. Charest, and Morton K. Rothschild, all of Washington, D. C., for appellee in case No. 4998.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

The sole question involved in these cases is whether certain cash payments received by appellants in the course of the consolidation of two national banks, in one of which appellants were stockholders, were paid to appellants as dividends, or as part consideration in an exchange of the stock entering into the consolidation. The appellants claim that the payments in question fall within the latter description, and are not directly assessable as income because of the provisions of section 202(c)(2) and section 202(e) of the Revenue Act of 1921 (42 Stat. 227). The Commissioner of Internal Revenue, however, held that the payments were received as dividends, and assessed them as such, which decisions were sustained by the Board of Tax Appeals. 15 B. T. A. 1018. Hence these appeals.

It appears that in the year 1922, two national banks were engaged in business in the

city of Waterbury, Conn., named, respectively, the Manufacturers' National Bank and the Citizens' National Bank. Each at that time had a capital stock of $300,000. In August of that year the banks entered into an agreement of consolidation, which afterwards was carried out according to its terms. The agreement provided that the two banks should be consolidated under the charter of the Manufacturers' National Bank, and should be named the Citizens' & Manufacturers' National Bank of Waterbury; that the consolidated bank should have a capital stock of $600,000 and a surplus of $200,000; that each constituent bank was to contribute thereto assets in the sum of $400,000; and that each stockholder of the two banks should receive one share of the capital stock of the consolidated bank for every share of stock held by him in either of the constituent banks. It was agreed also that the assets of each of the two banks in excess of the amount necessary to make up its contribution to the capital and surplus of the consolidated bank should be transferred before the effective date of the consolidation to trustees "for the ultimate benefit of its shareholders, upon whatever terms and under whatever conditions shall be deemed proper"; the trustees were to retain for a period of two years out of the assets of each bank so transferred to them the sum of $125,000, to constitute a fund from which to pay to the consolidated bank any loss which it might suffer in the collection and payment of any of the assets contributed by either bank to the consolidated bank; and that after the expiration of two years they were to pay the aforesaid sum, after adjustment between the two banks, to the consolidated bank to be added to its surplus.

The consolidation was actually and duly effected on November 11, 1922. On that day the consolidated bank was furnished by the two banks in equal shares with assets in the total amount of $800,000, and the excess assets of each constituent bank above the $400,000 thus contributed by it to the consolidation were turned over by the banks to the respective trustees for the ultimate benefit of the shareholders of the two banks.

On November 15, 1922, the trustees of the Manufacturers' National Bank held their first meeting and voted that "a liquidating dividend of 50% upon the capital stock of the Manufacturers' National Bank was de-clared," which was paid by the trustees out of the excess assets in their hands to the stockholders of the bank of record on the date of the consolidation. This was followed by similar dividends, to wit, 10 per cent. in 1923; 4 per cent. in 1925; and in the year 1926 a final distribution of the excess assets of the bank remaining in the hands of the trustees, amounting to 2 per cent.

During this entire period, the appellants William E. Fulton and William Shirley Fulton, were severally the owners of certain shares of the capital stock of the Manufacturers' National Bank, and severally received the shares of stock in the consolidated bank according to the agreement, and were paid by the trustees their share of these distributions. The present question is whether such payments were dividends returnable for income tax by appellants, under section 201(a) of the Revenue Act of 1921, 42 Stat. 227; or were payments received by appellants as part consideration for the stock received by them in the consolidated bank. Under the latter interpretations, the payments would not be returnable by appellants as dividends. Section 202(c) and paragraph (2) thereof, and section 202(e), of that act.

In our opinion the payments were dividends under section 201(a), Revenue Act of 1921. The funds so distributed by the trustees were not paid to appellants as part consideration for their stock in the Manufacturers' National Bank which was exchanged for that in the consolidated bank, but were sums returned to them from the assets of the former bank held by the trustees over and above the amount which had been carried into the consolidation. In legal contemplation these had remained the property of the Manufacturers' National Bank, placed by that bank in the hands of trustees of its own selection, in trust for its stockholders; and, when finally paid to the stockholders, they were received by them as a return of excess assets which had never passed from their equitable ownership. Inasmuch as the assets of the bank included earnings or profits accumulated since February 28, 1913, in a sum greater than the aggregate of the distribution in question, the payments are presumed to have been made from such earnings or profits and are dividends under section 201(b), Revenue Act of 1921.

The decisions of the Board of Tax Appeals in these cases are accordingly affirmed.