Paul M. DAVIS and Augusta S. Davis,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 13394.

United States Court of Appeals
Sixth Circuit.

May 12, 1958.

William Waller, Nashville, Tenn. (Waller, Davis & Lansden, Nashville, Tenn., on the brief), for appellants.

Myron C. Baum, Washington, D. C. (Charles K. Rice, Lee A. Jackson, Washington, D. C., Fred Elledge, Jr., Nashville, Tenn., on the brief), for appellee.

Before McALLISTER and STEWART, Circuit Judges, and CECIL, District Judge.

STEWART, Circuit Judge.

In 1951 the appellant Paul M. Davis received a cash payment of approximately $12,000 from Continental Bus System, Inc. The question for decision is whether this payment was taxable to the appellants as a long-term capital gain, as they contend, or was ordinary income, as the district court found. The answer depends upon whether the payment consti-

tuted "boot" under Section 112(c) (1) of the Internal Revenue Code of 1939.[1]

The facts are undisputed. In 1947 Mr. Davis was a stockholder in Continental Bus System, Inc. That year Continental's stockholders made agreements with two other bus companies whereby the assets of those two companies and the stock of Continental would be transferred to a new corporation in exchange for its stock and debentures. These agreements were carried out. The Continental stockholders as a group received less than thirty-five per cent of the common stock of the new corporation and did not control it. It is stated in the government's brief that "Both parties are in agreement that the transaction in which taxpayers exchanged their shares was not a reorganization under Section 112(g) of the 1939 Code."[2] The transaction was a tax free exchange, however, under Section 112(b) (5), because the parties to the agreement received stock and debentures of the new corporation substantially in proportion to the interests which they transferred to it.[3]

The agreements provided that for purposes of the exchange the net book value of Continental's assets as of the date of consummation of the transaction would be $2,405,095, and that if a subsequent audit should show that the actual net book value was more or less than that figure, a cash adjustment would be made. The language used in the agreements was that the Continental stockholders "shall pay any deficiency or have refunded to them any excess." Such an audit, which was not made until 1951, developed that the net book value of Continental's assets on the date of the exchange in 1947 had exceeded the agreed value by more than $100,000. Davis, as one of the former Continental stockholders who were parties to the 1947 agreement, received as his proportionate share of the resulting cash adjustment the payment which is here in issue. The payment was actually made by Continental, which was then being operated as a wholly-owned subsidiary of the new corporation. At the time of these payments to its former stockholders Continental had more than suffi-

1. "(c) Gain from exchanges not solely in kind. (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (l), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (l) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." 26 U.S.C.A. § 112(c).

2. "(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is sole-

ly for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (E) a recapitalization, or (F) a mere change in identity, form, or place of organization, however effected." 26 U.S.C.A. Section 112(g) (1).

3. "(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." 26 U.S.C.A. Section 112(b) (5).

**50**

cient earnings and profits to cover dividends in the amount of the payments.

Upon these undisputed facts the district court entered a summary judgment in favor of the government. It was the court's conclusion that the cash adjustment in question was not "a part of the agreed upon exchange," that it was "excluded from the transaction for the purpose of decreasing the amount contributed by the stockholders of Continental to the new corporation," and that the distribution by Continental in 1951 "was a dividend as that term is defined in Section 115(a) of the Internal Revenue Code of 1939."

Although the question is a close one, it is our opinion that the transaction in question was of a character to bring the 1951 distribution within the provisions of Section 112(c) (1), and therefore taxable as a capital gain.[4] This case is to be distinguished from Fulton's Executors v. Commissioner, 1931, 60 App.D.C. 74, 47 F.2d 436, where the excess assets never came under control of the new corporation, but were transferred to trustees for distribution to the stockholders.

Here the shareholders of Continental agreed in 1947 to exchange all their stock for a specified amount of stock and debentures in the new corporation, upon the assumption that the book value of the Continental stock equaled a stated amount. If, however, it should turn out that the book value exceeded that amount, the agreement provided that the shareholders were to receive additional consideration for their stock in cash. The cash payment was therefore within the literal provisions of Section 112(c) (1) of the 1939 Code.

The judgment of the district court is set aside, and the case remanded for further proceedings in accordance with the views here expressed.

4. Since there was here no "reorganization," Section 112(c) (2) which would, tax the distribution as ordinary income if it had "the effect of the distribution

of a taxable dividend," is inapplicable. See Commissioner of Internal Revenue v. Bedford's Estate, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611.